## The Inhabitants of LIVERMORE, *petitioners for a writ of certiorari.*

The County Commissioners, on a petition for certain *alterations* in an old County road, have no power to locate a *new road.*

THIS was an application for a writ of *certiorari* to quash the proceedings of the County Commissioners in the laying out of a County road from the town of *Jay,* through *Livermore,* to *Turner.* The facts upon which the application was based are sufficiently stated in the opinion of the Court.

*Washburn,* for the petitioners, contended that the original application being for *alterations* in the old road *merely,* and the County Commissioners having undertaken to locate an entire *new road,* their proceedings were void ; — and cited the case of the *Commonwealth* v. *Inhabitants of Cambridge,* 7 *Mass.* 162.

*R. Goodenow,* for the respondents, argued that, the County Commissioners had not by their adjudication departed from the prayer of the petitioners, but that what they had done was substantially an *alteration* of the old road.

2. That if the alteration operated as a discontinuance of the old road, it was no cause for quashing the proceedings.

3. That an *alteration* of a road did not *necessarily* operate as a *discontinuance* of the old road; unless the latter became thereby unnecessary for the public. *Roxbury* v. *Cambridge*, 8 *Mass.* 457.

4. That, the additional or explanatory report of the County Commissioners was extra judicial, without authority and therefore void; and could not in any way control or alter the legal effect of their prior proceedings.

5. That, this being an application to the discretion of the Court, they would not disturb the proceedings unless manifest injustice had been done.

WESTON J. — *Ebenezer Keyes* and others made application to the proper tribunal for several alterations in the county road, leading from the county ferry in *Jay*, through *Livermore*, to *Turner* village. The County Commissioners, having ordered due notice, located and reported a way between the termini; and at their regular term in *October*, 1832, accepted the report, and ordered it to be recorded. At a subsequent term, in *June*, 1833, they declared that it was not their intention to discontinue any part of any county road established in the town of *Livermore*; and that in the opinion of the County Commissioners, the part of the road in that town, supposed to be discontinued by operation of law, in consequence of their location, under the petition of *Keyes* and others, was still necessary for the public convenience and accommodation; and they made an addition to their former report to this effect, and ordered the same to be recorded.

In answer to the objections taken by the town of *Livermore*, it has been contended that the business in relation to that petition was finished at *October* term; and that what the commissioners did in *June* was extra judicial and inoperative, and cannot be taken into consideration as a part of the record. It is true, the proceedings and adjudication of the Court have the appearance of having been perfected at *October* term; and such doubtless was the understanding of the commissioners. But finding that their location was understood to have a different effect from what they

MAY TERM, 1834. 277

The Inhabitants of Livermore, *petitioners for a writ of certiorari*.

intended, as every thing was done by their agency, it may be regarded as competent for them to explain their doings, according to their intention, in a manner not to be misapprehended. If, however, this proceeding was unwarrantable on their part, we must take the record as they have left it, in determining upon the validity of what they have done. As the record stands then, it appears that a new county road has been laid out in *Livermore,* upon the petition of *Keyes* and others; and that there may be no mistake, the County Commissioners expressly there certify, that this was what they intended to do. But the town of *Livermore,* who have a deep interest in the question, had no notice that such a measure was contemplated. They were notified of the pendency of *Keyes'* petition; but that contained no application for a new road. To that they might be opposed, although not unwilling that the alteration prayed for might be made. The statute in relation to the laying out of public highways in *Massachusetts,* which is similar to our own, has received an elaborate exposition from Chief Justice *Parsons,* in the *Commonwealth* v. *Cambridge,* 7 *Mass.* 158, cited in the argument. The positions there laid down, have not been questioned in any subsequent case. It is there established, and that upon the basis of a former decision, *Commonwealth* v. *Westborough,* 3 *Mass.* 406, that the alteration of a highway is a discontinuance of the old way. That a petition to turn or alter an old road, is a different thing from an application for a new one. The Chief Justice states, that "the issue is the truth or falsehood of the allegations in the petition; and the town can have no motive to appoint agents for any purpose foreign to this issue. If the adjudication be of matters collateral to this issue, and on allegations not made in the petition, the application to the Court is no foundation for this adjudication, neither have the parties had notice, nor have they been heard on the matters adjudged." In the case before us, the town of *Livermore* has not had notice, or had an opportunity to be heard, upon the point adjudged. This we must regard as an objection fatal to the proceedings.

*Certiorari granted.*