## STATE *v.* CANTERBURY.

Upon a petition to widen and straighten an existing highway, the commissioners, in straightening curves or corners, may depart entirely, for short distances, from the route of the old highway; and the fact that the new route varied in some places four rods from the limits of the old road, is no objection.

But a new highway cannot be laid out upon a petition to widen and straighten an existing highway.

An existing highway is properly widened if the additional strip of land is needed for any public use connected with the highway; and where this additional land is or has been put in proper state and condition for such use before the road is widened, and while it thus continues, an information or indictment for unnecessarily neglecting to alter and put in proper repair such road, could not be sustained.

But if there is any thing to be done before said additional strip of land is fitted for the use for which it was intended, which the town have neglected to do, such information or indictment may be sustained, if that neglect has been unreasonable.

A neglect to alter, for six years after a road is widened, when such alteration is necessary, is an unreasonable neglect.

When there has been such neglect, under such circumstances, evidence offered for the purpose of proving that there has been no nuisance, injury, or inconvenience in any way to the public or individuals from such neglect, is inadmissible.

INFORMATION, filed February, 1859, for not widening and straightening a public highway.

On the trial it appeared that a petition was presented to the Court of Common Pleas for the widening and straightening of an existing highway, and thereupon proceedings were had and judgment was rendered on a report of the road commissioners, March, 1854. By that report a new highway, distant about four rods from the existing highway, was laid out for a portion of the distance included in the petition, and for the remainder of the distance the existing highway was widened by the addition of a strip of land along one side of it. The respondents objected that the judgment, so far as it related to the new highway, was without authority and void, and being entire, was, therefore, void as to the whole matter. But it appearing that the new highway had been built by the town and used by the public, the court ruled that this was competent to be submitted to the jury as evidence of a waiver by the respondents of any objections to the judgment as aforesaid in the Court of Common Pleas, so far as the remainder of the distance was concerned, if such an objection could be made in this case.

The respondents offered evidence to prove that there had been no nuisance, injury or inconvenience, in any way, to the public or individuals, from the neglect to widen the existing highway, by the addition of the strip of land, as reported by the commissioners; but the court ruled that the respondents were liable, if that widening had not been made so as to be fit for use by the public; and therefore rejected the evidence offered, as immaterial, it being proved and admitted that the strip over which the road was widened was wholly impassable, and that the town had done nothing upon it; whereupon a verdict was rendered, by consent, against the respondents, subject to exceptions on account of the above rulings of the court;

and the questions of law arising upon the case were reserved for the determination of the whole court.

*Minot & Mugridge,* for the defendants.

(1.) Is it competent, on a petition to widen and straighten an existing highway, to lay out one on entirely distinct and separate ground ? The new highway certainly would not in any sense be a widening of the existing highway. See *Commonwealth* v. *Cambridge,* 7 Mass. 154. Nor would it *territorially* be a straightening, but a new highway, though perhaps answering the same purposes. In this particular case the variation may not seem very material, but the question involved is of great importance.

(2.) The information was for not widening and straightening. In support of it the proceedings in the Court of Common Pleas were offered in evidence; and they were indispensable, because the whole question of the duty of the town to widen and straighten depended entirely upon them. It was competent for the defendants to show from those records that the court had no authority to render the judgment it undertook to render. The cases cited in the brief by the counsel for the State do not conflict with this position. See also *Griffin's Petition,* 27 N. H. 343; *Commonwealth* v. *Cambridge,* 7 Mass. 158. The judgment in the Court of Common Pleas is an entirety, and indivisible, and therefore, if void in part, is void *in toto.*

With regard to the waiver—even if the act of the town in building the new highway would be competent evidence of a waiver as to that part—yet it could not be as to the remainder, about which it refused to do anything.

(3.) The ruling of the court in rejecting the evidence proposed was erroneous. *State* v. *Boscawen,* 28 N. H. 195, is directly in point. In that case the evidence proposed was to show that there was no nuisance to the public from a neglect of the whole highway laid out. But in this case the evidence was offered to show that there was no

State *v.* Canterbury.

nuisance from a neglect merely of a narrow strip on one side of an existing highway, already in use by the public. Very few indeed of the highways in this State are fit for use in their whole width. Are the towns, therefore, liable to indictments and fines, although a sufficient portion of the width, for the reasonable convenience of the public, may be in proper order? The allegation in the information, "to the common nuisance," &c., is material, and must be proved. But the ruling of the court below, in rejecting the evidence proposed, was in effect to render all evidence on that point immaterial.

*W. E. Chandler* (with *Everett*, Solicitor), for the State.

1. It was competent for the commissioners, in widening and straightening the highway in question, to add, for that purpose, the new highway described. Such power is forbidden by no statute or decision, and without it the authority to straighten a highway is very inadequate. A curve cannot be straightened without taking some new territory, and if the commissioners may go partly out of the old highway, what is to be the limit? If they may go four inches out of the old track, they may four rods, and the commissioners and not the court are to set the limit.

2. But the defendants cannot in this proceeding take advantage of the alleged defect, (1.) because the judgment, widening and straightening the highway, cannot be thus collaterally impeached; (2.) because the judgment, in any event, is void only as to the part improperly added, and valid as to the part for neglecting to build which the defendants are upon trial; and (3.) because the defendants, by building the alleged illegal portion, have become estopped from making their objection in any form of process. The following authorities conclusively settle these points: *White* v. *Landaff*, 35 N. H. 128; *State* v. *Richmond*, 26 N. H. 232; *Commonwealth* v. *Weiher*, 3 Met. 445; *State* v. *Weare*, 38 N. H. 314.

3. The court properly rejected as immaterial the evidence offered by the defendants. The extent of the rule in *State* v. *Boscawen*, 28 N. H. 231, is, that it must appear that the new highway is impassable without being actually made, wrought upon and put in condition by the labor of the town,—to negative the idea that the same may have been passable in its natural condition. The question in such a case is, whether there was any " necessity of making," in order that the new road may be passable, and not whether there was any " necessity of laying" the new road in the first instance. In this case the court, upon the original laying out, had decided that the strip of land was necessary to the highway. The evidence showed it to be impassable ; and the defendants, in offering the evidence in question, proposed literally to try over again a question involved in and conclusively adjudged by the original laying out.

SARGENT, J. The Revised Statutes (chapter 49, section 1) authorize selectmen of towns, upon petition, to lay out any new highway, or to widen and straighten any existing highway within their town, &c. ; and by chapter 50 the Court of Common Pleas is invested with the same powers in certain cases. There being a distinction made in the law between laying out new highways and widening and straightening existing ones, the question is raised by this case, as to where the line is to be drawn between them ; for although it is well settled that, upon a petition for a new highway, selectmen and commissioners may lay out a road in part new, and in part over and upon an existing highway [*Hopkinton* v. *Winship*, 35 N. H. 209, and cases cited], yet it would not be competent, upon a petition for a new highway, to undertake merely to widen an old one without laying any part new ; and if, upon such a petition, there should be a report disclosing such a widening only, the court might not have jurisdiction to render

a valid judgment. So upon a petition to widen and straighten an existing highway; if selectmen or commissioners should lay out an entirely new road from one terminus to the other, without intersecting the existing highway at any intervening point, and these facts appeared in the report, no valid judgment could perhaps be rendered upon it. Whether the new highway might answer as a substitute for the old, so that the latter might be discontinued or not, might not, under our statute, be a conclusive test. But the question here raised is, whether, upon a petition to widen and straighten an existing highway, the selectmen or commissioners may vary at all from the line of the old highway? That they may take such additional width of land upon either side as is needed, there can be no doubt. But this they could do under the provision for widening alone. And can they do anything more under their power to straighten, than to remedy or lessen those slight curves that exist in it, as far as they may, by taking the additional width of land upon one side or the other of the existing highway, as shall best accomplish that object? We think they may, and that the word straighten has a meaning and an application broader and more extensive than the mere widening of the way. We think they may straighten the existing highway by cutting off short curves, and may in that way vary entirely from the route of the old road. And what appears in this case is by no means sufficient to show that what was done by the commissioners here could not properly and legitimately be done upon the petition to widen and straighten. That the line of the road was varied in places four rods, or even more than that from the line of the old highway, would not necessarily show any such laying of a new highway as could not properly take place upon this petition.

In Massachusetts their statute formerly authorized the court " to lay out new county roads, or to turn or alter

old roads," on application made, &c., under which statute it was held, that, upon a petition to turn or alter an old road, the court might make any turns from the old route, or alterations in it, passing in places wholly over new ground, and leaving the old route at a considerable distance, yet that this was not laying out a new highway, within the meaning of that term as used in the statute. They also held that when such alterations were made in an existing highway, and established by the court, this alone operated in law as a discontinuance of the part altered. And in one case, where the locating committee reported in favor of the alteration prayed for, but recommended that the old road thus altered should not be discontinued, and judgment was rendered on that report, *certiorari* was brought to quash these proceedings; and it was held that the effect of this judgment in law was virtually to lay out a new road, where none had been petitioned for, and the proceedings were quashed. *Commonwealth* v. *Westborough,* 3 Mass. 406; *Commonwealth* v. *Cambridge,* 7 Mass. 158.

By our statute, so long as the departures from the old route are evidently for the purpose of straightening the existing highway, and are not of very considerable length, they may be proper upon a petition like this. But should a new highway, evidently such, be attempted to be laid out upon a petition to widen and straighten only, then the jurisdiction is exceeded, and the action of the court is void, or at least voidable.

Having settled that the facts stated in this case do not show any new road laid, and nothing more than a proper straightening of an existing highway under the statute, it becomes unnecessary to consider the question of *waiver* raised in the case.

Upon the other question, as to the admissibility of the evidence offered, if we understand the case, there would seem to be no doubt. The case itself, at first, seems to be

susceptible of a double construction. If it means that the ruling of the court below was, that the widening of the road at the place in question must have been so made that the additional strip of land here taken must have been converted into a road-bed, and made suitable for travel; and because this had not been done that the town was necessarily liable, however good and sufficient the old traveled track may have been, then the ruling was undoubtedly wrong, because there were various uses that this land may have been needed for beside a road-bed. It frequently becomes necessary that a road should be widened in our country towns, merely for the purpose of removing a wall or fence on one side further back, so as to prevent the snow in winter from drifting over it into and across the traveled track. Highways are sometimes widened at certain points in order to furnish the materials, such as stone, gravel, and hard-pan, with which to repair the road-bed, when the additional land taken was never, any part of it, designed or needed for a road-bed or traveled track, and was never taken for any such purpose. But it might be necessary that something should be done by the town, in order to fit it for the uses for which it was designed. If the widening here was for the purpose of throwing back a stone-wall or fence, to prevent the snow drifting into the traveled track, then the wall or fence must be moved back upon the new line. If it was widened to furnish materials to repair the road-bed, then a wall or fence might need to be removed in order to make it accessible for the purposes for which it was needed to be used; and if it was needed for a traveled track, then it must be worked and put in proper condition for the travel needing to pass over it.

Now the case finds that this strip of land, added to the old road here, by the commissioners, was wholly impassable, so that if this land was needed for the road-bed, then the case negatives the presumption or the possibility that

it had been made before it was laid out, or that it was in such a state as to be sufficient for such use without the town doing any thing upon it. *State* v. *Canterbury*, 28 N. H. 226. If this additional land was needed for any other purpose, such as the removing of a wall or fence, or other obstruction, then the case finds that this had not been done; for the court ruled that the respondents were liable, if that widening had not been made so as to be fit for use by the public. If it had been made fit for use by the public, whatever that use may have been, then of course by the case the respondents would not be liable. The case, therefore, must be understood to find that this strip of land was not fit for the use for which it was designed by the commissioners. It also appears, by the offer of the respondents themselves, in proposing this testimony, that the town had neglected to widen the existing highway by the addition of this strip of land, and the case also finds that the town had done nothing upon it.

The case, then, as we understand it, finds that this additional strip of land here was not fit for public use, whatever use it may have been designed for; but that something must be done to fit it for such use, and that this something, whatever it may be, had not been done, and that, too, after some six years had passed after the judgment was rendered upon the report widening the road. This is an information against the town for "unreasonably neglecting to alter" and put in good repair a highway which has been widened and straightened therein, founded upon the second cause assigned in section 1 of chapter 53, Revised Statutes, for which towns may be fined. Upon the facts stated in the case, then, the only question for the jury was, whether the town had unreasonbly neglected to do something, which was necessary to be done in order to fit this new portion of the highway for the use and purpose for which it was designed. But it was settled, in *State* v. *Landaff*, 22 N. H. 588, that it fol-

lowed as a conclusion of law, upon facts not making nearly as strong a case as those here presented make, that the town had unreasonably neglected. If the town had thus unreasonably neglected in the case before us, it would be a conclusion of law that it was to the public nuisance, and an offer to prove, under such circumstances, that there had been no nuisance, &c., would be simply an offer to prove that an admitted nuisance was not a nuisance; that what the statute makes a nuisance was not in fact so.

If there was no nuisance in the town neglecting to alter this road, so as to fit it for public use, in six years, there probably never would be, and the offer of the respondents would be substantially to prove that no change in the highway here was ever necessary, which could only have been proper evidence to be submitted to the commissioners who widened the road; but, after they have once settled, the question of the public necessity of this change would not afterwards be competent in any proceeding like this.

There must be, therefore,

*Judgment upon the verdict.*