STATE EX REL. SCHROEDER, Appellant, vs. BEHNKE and others, Town Supervisors, Respondents.

*April 5—June 28, 1917.*

*Highways: Alteration: Discontinuance: Power of town board: Statute construed: Highway "improved by county board:" Bridge built with county aid.*

1. The provision in sec. 1265, Stats., that "no town board shall have power or authority to alter, change, or discontinue . . . any highway or portion thereof which shall have been improved by the county board by the expenditure thereon of county money," applies only to such highways as have been improved by the county board pursuant to sub. 1, sec. 1317m—5, or sub. 7, sec. 1319; and the mere fact that the county aid provided for in sec. 1319 was obtained by a town for the construction of a bridge on a town highway does not bring the highway within such prohibition.

2. Where, in terms, an application under sec. 1265, Stats., was for the laying out of a new highway and discontinuance of an old one, but the practical effect of granting it would be merely to change the course of the existing road for a distance of about 180 rods, the proceeding must be treated as one for the alteration of the existing road, and the laying out of the highway on the proposed course would, of itself, operate to discontinue the portion of the old road so altered.

APPEAL from a judgment of the circuit court for Sauk county: JAMES O'NEILL, Judge. *Reversed.*

This is an action of *mandamus* by *Henry Schroeder* as relator to compel the town board of Excelsior to open up a new road as laid out by commissioners appointed by the county court of Sauk county.

*Henry Schroeder* and five other residents of Excelsior petitioned the town board of Excelsior to lay out a road and discontinue a part of an old one in the town of Excelsior. The petitioners state that the old road, on which is a bridge spanning a creek, was built by the town with county aid, and that this old road is so hilly and steep that it is dangerous for public use, and that the new road could be built somewhat shorter than the old and would contain less dangerous grades.

The town board denied the application upon the ground that the board had no jurisdiction to discontinue the old road because the bridge thereon was built by county aid.

The petitioners appealed from this order to the county court of Sauk county, which appointed commissioners to review the order. The town board objected to the jurisdiction of the commissioners on the ground that the board was without authority under the prohibition contained in sec. 1265, Stats.

The commissioners reversed the order of the town board and ordered the new road to be laid out and the old one to be discontinued. The commissioners also declared that the new road be laid out "regardless of the fact whether the highway asked to be discontinued be discontinued or not" for want of power to do so in this proceeding.

The town board refused to open the new highway as laid out by the commissioners, and moved to quash the writ of *mandamus* to compel it to do so.

Judgment was entered by the court quashing the writ of *mandamus* and awarding to the respondents their taxable costs and disbursements. The plaintiff appeals from this judgment.

For the appellant there was a brief by *Grotophorst, Thomas, Rieser & Quale* of Baraboo, and oral argument by *H. H. Thomas.*

For the respondents there was a brief signed by *Stone &*

*Quimby,* attorneys, and *H. N. Winchester,* of counsel, all of Reedsburg, and oral argument by *James A. Stone.*

The following opinion was filed April 24, 1917:

SIEBECKER, J.    The ruling of the trial court to the effect that the town board had no jurisdiction in the matters presented by the petition of the resident freeholders of the town for laying out a new road and discontinuing an old one was based on the grounds that the town board, under the provisions of sec. 1265, Stats., as amended by ch. 605, Laws 1911, had no "power or authority to alter, change, or discontinue . . . any highway or portion thereof which shall have been improved by the county board by the expenditure thereon of county money."    The court held that the old portion of the road in question was improved by the county board within the calls of this statute.    The fact is undisputed that the existing bridge over the creek on this old road was constructed by the town and that the county aid provided for by sec. 1319, Stats., was obtained upon demand of the town.    This statute empowered towns to construct bridges, and upon compliance with the provisions thereof by the town the county is compelled to provide for the payment of such portion of the cost of a bridge as the statute specifies.    It is plain from the terms of the statute that bridges constructed under it are town bridges for the improvement of highways.    The aid required of counties to pay a portion of the cost of such bridges does not make them county bridges within the contemplation of the provisions of sub. 7, sec. 1319, nor under the provisions of sub. 1, sec. 1317m—5.    The provisions of sec. 1265 depriving towns of "power or authority to alter, change, or discontinue . . . any highway or portion thereof which shall have been improved by the county board by the expenditure thereon of county money," clearly embrace only such highways as have been improved by a county board at the expense of the county as specified in sub. 1, sec. 1317m—5, and

sub. 7, sec. 1319. It is manifest that the old portion of the road in question with the bridge thereon is not such a road. It follows that the town board has jurisdiction in the matters presented by the petition of the resident freeholders of the town and that the commissioners appointed by the county court on appeal from the town board's refusal to act had jurisdiction of the application presented to the town board.

The question remains whether the application is one to lay out a new road and discontinue an old one, or whether it is in substance and effect an application for the alteration of the existing road. The language of the application speaks of the proceeding as laying out a new road and discontinuing an old one, but an examination of the location and courses of the described roads shows, as the plat indicates, that if the petition is granted the practical effect is to change the course of the existing road for a distance of about 180 rods from the point where it intercepts an existing highway. It is manifest from the location of the existing portion of the old road sought to be discontinued and the proposed road with its connection with the old road that the proceeding simply constitutes an alteration of the existing road and should be so treated. The fact that the language of the application speaks of laying out a new road and discontinuing an old one is not controlling of the actual physical situation presented by the proceeding. As stated in *State v. Reesa,* 59 Wis. 106, 17 N. W. 873, in reference to a proceeding like this:

·"But words do not make things or subjects, but attempt to express them only, and when the evidence shows precisely what the thing or matter really is, then mere words should not be accepted as changing such thing or matter by the mere force of definitions."

We are persuaded that the proceeding is in substance and effect one for the alteration of the existing road and that it must be so treated. The effect, therefore, of laying out the road on the proposed course operates to discontinue the de-

scribed portion of the old road. See *State v. Reesa, supra; Hark v. Gladwell,* 49 Wis. 172, 5 N. W. 323. The order of the commissioners appointed by the county court is legal and valid and the trial court erred in adjudging it to be illegal and void.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the circuit court with direction to award judgment directing that a peremptory writ of *mandamus* issue commanding the town board of the town of Excelsior to proceed to lay out and open the road as determined by the commissioners appointed by the county court and assess damages therefor as required by statute.

A motion for a rehearing was denied, with $25 costs, on June 28, 1915.